**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARTIN P. DILLON,

                        Plaintiff,

      - v -                                 Civ. No. 1:14-CV-1011
                                                            (GLS/DJS)

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                        Defendant.

**APPEARANCES:**                               **OF COUNSEL:**

OFFICE OF PETER M. MARGOLIUS        PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskills, New York 12414

SOCIAL SECURITY ADMINISTRATION     JEREMY A. LINDEN ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

In this action, Plaintiff Martin Dillon moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying his applications

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] Based upon the following discussion, we recommend that the Commissioner's decision denying Social Security benefits be **affirmed**.

## I. BACKGROUND

Dillon, born on March 17, 1960, filed an application for DIB and SSI on July 28, 2009, claiming an inability to work as of July 27, 2009, due to a variety of ailments, including a heart condition and anxiety disorder. Dkt. No. 9, Admin. Transcript [hereinafter "Tr."] at pp. 138-51 & 167. He completed three years of college, but did not receive any degree, and has not completed any type of specialized job training, trade, nor vocational school. *Id*. at p. 172. His past work included building maintenance, census taker, factory worker, food vendor, and inventory specialist. *Id*.

Dillon's disability applications were denied on initial review. *Id*. at pp. 72–79. On January 7, 2013, a Hearing was held before Administrative Law Judge ("ALJ") Robert Wright wherein testimony was procured from Dillon, who was accompanied by a non-attorney representative. *Id*. at pp. 46-66. Thereafter, on February 27, 2013, the Hearing continued wherein testimony was procured from a vocational expert ("VE"). *Id*. at pp. 31-45. On March 18, 2013, ALJ Wright issued an unfavorable decision finding

---

[1] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 10, Pl.'s Br., & 13, Def.'s Br.

that Dillon was not disabled. *Id.* at pp. 8-30.  On June 24, 2014, the Appeals Council determined there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 1–6.  Exhausting all of his options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an

analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual

functional capacity ("RFC")[2] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

## C. ALJ Wright's Findings

As noted above, Dillon and a VE were the only witnesses to testify at the two Hearings. Tr. at pp. 31-66. In addition to such testimony, the ALJ had Dillon's medical records. *Id.* at pp. 201-561.

In his decision, dated March 18, 2013, ALJ Wright noted initially that, for DIB purposes, Dillon met the insured status requirements of the Social Security Act through September 30, 2013. *Id.* at p. 13. Using the five-step disability evaluation, ALJ Wright found that: (1) Dillon had not engaged in any substantial gainful activity since July 27, 2009, the alleged onset disability date; (2) he has severe medically determinable impairments, namely cardiomyopathy, hypertension, hyperlipidemia, depression, anxiety, dysthymic disorder, and personality disorder; (3) his severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) he retains the RFC to perform light work, as defined by the Regulations, with certain limitations, and as such, he could not return to any of his prior work; but, (5) considering his age, education, work experience, RFC, the VE testimony, and using the Medical-Vocational Guidelines as a framework, Dillon could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 8-30.

**D. Plaintiff's Contentions**

In his five-paged Brief, Plaintiff presents one argument to the Court: In light of certain treatment notes, found on five separate pages in an administrative record that spans 561 pages, Plaintiff's RFC should have been assessed at the sedentary level, which, based upon the testimony of the VE, would direct a finding of disability. Pl.'s Br. at pp. 3-4. For the reasons stated below, Plaintiff's contention is without merit.

*1. RFC Determination*

As noted above, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1545(a) & 416.945; 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. §§ 404.1567 & 416.967. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at §§ 404.1545(a) & 416.945(a).

In this action, when assessing Plaintiff's RFC, the ALJ reviewed the entire record,

which included medical records and opinion evidence, and determined that Dillon had the RFC

> to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except th[at] he can perform unskilled work that is simple, routine, and low stress, defined as having only occasional decision making, changes in work setting, or interaction with coworkers and no interaction with the public.

*Id.* at pp. 15-16.

The ALJ further noted that,

> [b]ased on Dr. Puri's opinion, his and treating sources' clinical testing, and consideration of the claimant's less than fully credible allegations, I find that during an eight-hour workday and with normal breaks, the claimant can sit for up to six hours total and stand and walk for up to six hours total. . . . I also find that the claimant can lift, carry, push, and pull up to ten pounds frequently and twenty pounds occasionally . . . . [and l]astly, I find that the claimant must avoid concentrated exposure to respiratory irritants.

*Id.* at pp. 20-21.

In rendering this finding, ALJ Wright indicated that Plaintiff could perform the full range of light exertional work, which is defined as follows in the Regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

Plaintiff claims that this RFC determination is erroneous and that his RFC is more limited than that found by the ALJ. In support, Plaintiff identifies the following portions of the record that he contends the ALJ overlooked and would support a more restrictive RFC:

1) An office note, dated July 18, 2011, from Alfonso F. J. Prieto, M.D., Plaintiff's Treating Physician, noting Plaintiff's history of "chronic persistent atrial fibrillation in the setting of a nonischemic cardiomyopathy which has progressed from LVEF of 45% a few years ago now down to 30% with evidence of Class II-B heart failure symptoms over the last 9-12 months." Pl.'s Br. at p. 4 (quoting Tr. at p. 289).

2. A Cardiac Catheterization Report, dated August 4, 2011, documenting a moderately reduced ejection fraction of 30. *Id*. (citing Tr. at p. 294).

3. An Exercise Stress Test Report, dated September 7, 2011, documenting a work level of "Max. METS: 7.50". *Id* (citing Tr. at p. 374).

4. Cardiac Defibrillator Implantation record, dated August 4, 2011. *Id*. (citing Tr. at p. 491).

Notably, Plaintiff does not challenge the ALJ's assessment of his credibility, nor the weight he accorded to the various medical opinions included in the record. Having failed to present any objection thereto, and based upon this Court's review of the medical

record and the ALJ's decision, we find that the ALJ's credibility assessment and treatment of the various medical opinions is supported by substantial evidence and in rendering such finding he applied the correct legal standards.

With regard to Plaintiff's contention that the above five pages in the administrative record warrant a reversal of the ALJ's decision, the Court notes that the function of this Court through this administrative review is to review the record as a whole and determine whether substantial evidence supports the ALJ's decision. As a reminder, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Plaintiff's assertion that the ALJ overlooked or ignored these discrete portions of medical record is entirely without merit given the fact that the ALJ specifically cited to and discussed these very records. *See* Tr. at p. 19 (discussing the treatment reports from July 18 and August 4, 2011).

Plaintiff began treatment with Dr. Hiral Amin and Dr. Alfonso Prieto in early 2008. Tr. at p. 278. Plaintiff had a history of persistent atrial fibrillation, which Dr. Amin felt appeared to be "mildly symptomatic with evidence of mild-to-moderate cardiomyopathy with an ejection fraction of 38% to 40% with no evidence of heart

failure symptoms at [that] time." *Id.* Dr. Amin opined that Plaintiff likely had undiagnosed atrial fibrillation for the past ten to twenty years with mild symptoms. *Id.* at pp. 278 & 281.

Throughout the medical reports, Plaintiff is often noted as having failed to maintain his medical regimen, failed to show up to appointments, was inconsistent with taking his medication, did not attempt to diet and exercise as advised by his doctors, and continued to smoke one-to-two packs of cigarettes per day. *See* Tr. at pp. 253 (treatment note from April 2009 indicating Plaintiff was noncompliant with Coumadin therapy and would forget to take his Metoprolol), 278-79 (Plaintiff admitted to smoking two packs of cigarettes a day for the past twenty-seven years), 258 (Dr. Amin counseled Plaintiff on the importance of close monitoring in the Coumadin Clinic), 261 (noting poor compliance with Coumadin testing, failing to attempt to lose weight, and still smoking one pack of cigarettes per day), 264 (noting non-compliance with Coumadin therapy over the past seven months since he was last seen), 268 (during eight-month gap between treatment, Plaintiff was non-compliant with medication regimen), 286 (noting Plaintiff continued to be non-compliant with medication). Yet, during this time of sporadic treatment and missed medication, Plaintiff was generally asymptomatic. Even after July 28, 2009, the alleged onset disability date, and through May 2011, Plaintiff reported to his doctors that despite significant spans of time where he failed to seek treatment and

missed medication doses, he was asymptomatic with no unusual shortness of breath, chest pain, palpitations, dizziness, nor fatigue. *Id.* at pp. 257, 261, 264-65, 268, 283, & 284. Yet, on July 18, 2011, Plaintiff reported that for the past year he had experienced dyspnea with exertion on mild-to-moderate activities. *Id.* at p. 288. But, as the ALJ noted, this statement is contradicted by statements made two months earlier to the same doctor indicating he had only minimal shortness of breath and only with moderate-to-severe activities. *Id.* at pp. 19, 286, & 288. Nevertheless, because of the new complaints, he underwent a diagnostic cardiac catheterization and his diagnosis was changed to reflect moderate to severe non-ischemic cardiomyopathy, with left ventricle ejection fraction of 30 percent. *Id.* at pp. 289-301. Plaintiff was implanted with a single-chamber implantable cardioverter defibrillator ("ICD") and discharged the following day in stable condition. *Id.* at pp. 297 & 491-95. At his follow-up appointment with Dr. Prieto on September 7, 2011, Plaintiff reported to Dr. Prieto that the day after his ICD was implanted, he experienced over twenty ICD shocks due to rapidly conducting atrial fibrillation. *Id.* at p. 301. Plaintiff revealed that he did not take his medication on that particular day. *Id.* He denied chest pain, shortness of breath at rest, presyncope, and syncope. *Id.* Dr. Prieto counseled Plaintiff on the importance of taking medication with the device implantation. *Id.* It was noted that Plaintiff's cardiomyopathy was stable under the current medical regimen. *Id.* at p. 302.

Dillon did not seek further treatment until he returned to Dr. Prieto in March 2012. *Id.* at pp. 518-20. Plaintiff reported feeling well and that he had not had any further shocks. *Id.* at p. 518. He reported no paroxysmal nocturnal dyspnea ("PND"), orthopnea, leg edema, chest pain, palpitation, syncope, shortness of breath, or dizziness. *Id.* at pp. 518-19. And, as noted by the ALJ, the remainder of the medical record shows Plaintiff receiving only primary care treatment. *Id.* at pp. 496-503, 549-52, & 556-58. And throughout the duration of that treatment, Plaintiff remained asymptomatic, denied shortness of breath, chest pain, palpitations, or dizziness; his examinations regularly showed irregular heart rhythm but controlled heart rate, his lungs were clear to auscultation, and he had normal respiratory effort, normal gait, normal range of motion, full 5/5 strength, and intact sensation. *Id.*

In light of my review of the medical record, I find that the ALJ's RFC assessment is supported by substantial evidence and he applied the correct legal principles. In viewing the record as a whole, the ALJ has the discretion to resolve conflicts in the medical evidence, as ALJ Wright has done. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The RFC assessment is also supported by Plaintiff's activities of daily living, which include the ability to dress, shower, bathe, cook, clean, do laundry, drive, shop, regularly attend Alcoholics Anonymous meetings, and read novels. In light of this conclusion, I further find that at Step Five, the ALJ was entitled to rely upon the VE

testimony indicating that a hypothetical claimant with Plaintiff's RFC could perform other work that is available in the national economy. Thus, I recommend upholding the Commissioner's decision denying disability benefits.

### III. CONCLUSION

**WHEREFORE**, in light of the above, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be upheld; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: October 21, 2015
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge